UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMY RESNIK,

    Plaintiff,

-against-

RITE AID OF NEW YORK, INC.;
RITE AID OF NEW YORK CITY,
INC.; WALGREEN EASTERN CO.,
INC.; CVS PHARMACY, INC.; DRI
I, INC.; DUANE READE, INC.;
JOHNSON & JOHNSON; JOHNSON &
JOHNSON CONSUMER COMPANIES,
INC.; and KOLMAR
LABORATORIES, INC.,

    Defendants.

21-cv-4609 (JSR)

MEMORANDUM & ORDER

JED S. RAKOFF, U.S.D.J.

Plaintiff Amy Resnik, a New York resident, brought this products liability and negligence action in New York state court against Rite Aid of New York, Inc. and Rite Aid of New York City, Inc. (collectively, "Rite Aid"); Walgreen Eastern Co., Inc. ("Walgreens"); CVS Pharmacy, Inc. ("CVS"); DRI I, Inc. ("DRI I"); Duane Reade, Inc. ("Duane Reade"); Johnson & Johnson and Johnson & Johnson Consumer, Inc. (collectively, "J&J Defendants"); and Kolmar Laboratories, Inc. ("Kolmar Labs"). On May 21, 2021, J&J Defendants removed the case to this Court on the basis of diversity of citizenship, arguing that the New York citizenship of Rite Aid, Walgreens, and Kolmar should be disregarded because these

1

defendants were fraudulently joined. See Notice of Removal, ECF No. 1.

Before the Court are plaintiff's motion to remand the case to state court and motion for costs pursuant to 28 U.S.C. § 1447(c). See ECF No. 16-17. For the reasons set forth below, the Court grants plaintiff's motion to remand and denies the motion for costs.

BACKGROUND

As alleged in the amended complaint, Resnik purchased Johnson & Johnson's baby powder and SHOWER TO SHOWER® products containing asbestos-contaminated talcum powder from CVS, DRI I, Rite Aid, Walgreens, CVS, and Duane Reade stores in Queens, New York. See Am. Compl., Ex. 1, ECF No. 1-1, at ¶¶ 5-18, 21-29, 36. The amended complaint also alleges that Kolmar Labs "processed, compounded, tested, and distributed" the talcum powder contained in the Johnson & Johnson products that Resnik purchased. See id. at ¶ 20. Resnik claims that her continued use of these products between 1960 and 2016 caused her ovarian cancer. Id. at ¶ 89-175.

On April 7, 2021, Resnik sued Rite Aid and Walgreens in the Supreme Court of the State of New York, County of New York, asserting negligence, breach of warranty, strict products liability, fraud, civil conspiracy, and spousal loss of services claims. See ECF No. 1-1, at 5-49. Resnik then amended her complaint

on April 23, 2021 to assert claims against J&J Defendants, CVS, Duane Reade, DRI I, and Kolmar. See ECF No. 1-1, at 59-106.

J&J Defendants removed the case to this Court on May 21, 2021. See ECF No. 1. Resnik moved to remand the case to state court on June 4, 2021. See ECF No. 16. J&J Defendants moved to stay the proceedings pending the issuance of a conditional order by the Judicial Panel on Multidistrict Litigation transferring the matter to MDL No. 2738, see ECF No. 20, which this Court denied. Instead, the court stayed proceedings pending resolution of the motion to remand now before the Court.

LEGAL STANDARD

An action may be removed from state to federal court when no defendant is a citizen of the same state as the plaintiff and the amount-in-controversy exceeds $75,000. 28 U.S.C. § 1441(a); see also Gibbons v. Bristol-Myers Squibb Co., 919 F.3d 699, 704 (2d. Cir. 2019). However, under the "fraudulent joinder" doctrine, courts disregard the citizenship of any defendants who have "no real connection to the controversy." See Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998). Defendants seeking to show fraudulent joinder bear a "heavy burden." Brown v. Eli Lilly & Co., 654 F.3d 347, 356 (2d Cir. 2011). To establish fraudulent joinder, "defendant[s] must demonstrate, by clear and convincing evidence . . . that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against

3

the non-diverse defendant in state court." Pampillonia, 138 F.3d at 461. In conducting this inquiry, "all factual and legal issues must be resolved in favor of the plaintiff." Brown, 654 F.3d at 356.

ANALYSIS

I. Motion to Remand

A. Fraudulent Joinder of Rite Aid and Walgreens

J&J Defendants argue that Rite Aid and Walgreens have been fraudulently joined and that the Court must deny plaintiff's motion to remand because Resnik's allegations are too conclusory and too vague to support her causes of action under either New York or federal pleading standards. Def. Mem., ECF No. 23, at 11. They contend that the amended complaint is missing facts about what products Resnik purchased from which stores, when Resnik did so, what specific statements by defendants "advertised and marketed talc as safe for human use," and whether Resnik relied on those statements. See Notice of Removal ¶ 26; Def. Mem. 10-11.

New York adheres to a notice pleading standard, which is more lenient than the federal "plausibility" standards set forth in Twombly and Iqbal. New York state courts merely require a complaint to include enough detail "to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense." See N.Y. C.P.L.R. § 3013;

4

Williams v. Citigroup, Inc., 659 F.3d 208, 215 n.4 (2d Cir. 2011) (per curiam) (observing that New York's pleading standard "is more lenient than the 'plausibility' standard applicable in federal courts")

Resnik's complaint alleges that each of the retailer defendants "engaged in the manufacture, sale and distribution of materials and/or products containing asbestos, including products to which AMY RESNIK was exposed," that they "continually advertised and marketed talc as safe for human use," and that Resnik "purchased asbestos-containing talcum products, to which she was exposed from stores owned and operated by" each retailer. Am. Compl. ¶¶ 5-13, 21-29. The complaint goes on to describe at great length the putative carcinogenic properties of the talcum products that Resnik alleges she purchased from the retailers. Id. ¶¶ 47-74. J&J Defendants' demands for greater specificity are inconsistent with New York's relatively lax pleading standards, under which the court must "determine only whether the facts as alleged fit within any cognizable legal theory." ABN AMRO Bank, 952 N.E.2d at 474 (quoting Leon v. Martinez, 638 N.E.2d 511, 513 (N.Y. 1994)).

The fraudulent joinder talcum powder cases cited by J&J Defendants are readily distinguishable. For example, in Grant v. Johnson & Johnson, 2017 U.S. Dist. LEXIS 214078 (S.D.N.Y. Dec. 19, 2017), the court did not apply the Pampillonia standard for

fraudulent joinder but rather applied an entirely distinct fundamental fairness test for joinder of non-diverse parties after removal. Id. at *11. As for Gavin v. Johnson & Johnson (In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Litig.), 2019 U.S. Dist. LEXIS 25157 (D.N.J. Feb. 14, 2019), the complaint was deemed insufficient because it failed to allege that the plaintiff purchased talcum powder from the retailer in question. Id. at 16-17. In addition, the only allegations supporting the strict liability and negligence claims in Gavin were conclusory assertions that the defendants knew that J&J talc products were contaminated with asbestos. Id. at 20-21. In contrast, Resnik's complaint alleges that she purchased J&J talc products from each retailer sued and specifically points to studies on the carcinogenic nature of talc products, that defendants "tested the [talc] mines for and found asbestos in them," and that defendants belong to an organization formed "to defend talc in response to epidemiologic studies that found an association between ovarian cancer and genital talc use." Am. Compl. ¶¶ 53, 56, 79-80.

Because it is possible that Resnik's complaint could prevail in state court, J&J Defendants have not met their burden to show that Rite Aid and Walgreens were fraudulently joined.

6

### B. Fraudulent Joinder of Kolmar Laboratories

J&J Defendants argue that Kolmar has also been fraudulently joined because Resnik has insufficiently pleaded a connection between Kolmar's talc processing operations and the allegedly tainted products that Resnik purchased and because Kolmar is protected by the contract specification defense.

First, J&J Defendants argue that the allegation that Kolmar processed the talc in the products to which Resnik was exposed in New York is "demonstrably false," pointing to deposition testimony indicating that Kolmar only processed a limited portion of J&J talc products between 1980 to 1985 and that it is unknown whether "any Kolmar-bottled [baby powder] was ever released at all." Def. Mot. at 14-15. Resnik responds with deposition testimony of her own, highlighting testimony in which a Kolmar employee states that Kolmar bottled thousands of bottles of Johnson & Johnson's baby powder in the 1980s. See ECF No. 27-1, Ex. 8 (Leek Deposition), at 14:22-25; 20:4-23; 163:4-10.

J&J Defendants' first argument depends on deposition testimony that cannot be considered in this Court's fraudulent joinder analysis, because the fundamental question is whether Resnik can succeed in state court "based on the pleadings." Pampillonia, 138 F.3d at 461. Moreover, even if the Court were to consider the deposition testimony that defendants offer and the contradictory testimony that Resnik invokes in response, the Court

7

at this stage would have to resolve in Resnik's favor the factual question as to whether Kolmar processed any J&J products that Resnik ultimately purchased. See Brown, 654 F.3d at 356.

Second, J&J Defendants argue that there is no possibility that Resnik could recover against Kolmar in state court because Kolmar is shielded from liability by the contract specification defense under New York law. The contract specification defense forecloses liability against those who manufacture products "in accordance with the plans and specifications provided by the purchaser," unless the specifications are "so patently defective that a manufacturer of ordinary prudence would be placed on notice that the product is dangerous and likely to cause injury." Houlihan v. Morisson Knudsen Corp., 768 N.Y.S.2d 495, 496 (2d Dep't 2003).

J&J Defendants have failed to show that there is no possibility that Resnik will overcome the contract specification defense in state court. They contend that Court must infer from the amended complaint that Kolmar processed, compounded, tested, and distributed talc in accordance with J&J's instructions. But the amended complaint is silent on the existence of any such specifications. Further, the content of J&J's instructions, if any, whether Kolmar followed them, and whether the instructions were "patently defective" are fundamentally factual questions. The contract specification defense does not preclude Kolmar's liability as a matter of law, because Resnik could show that Kolmar

8

did not process the talcum powder in accordance with specifications, that the talcum products were obviously defective, or that Kolmar had actual knowledge of the alleged defect. See, e.g., Shanahan v. Kolmar Labs., Inc., 2019 WL 935164, at *2 (S.D.N.Y. Feb. 26, 2019) (concluding that Kolmar could prevail on a contract specification defense only if "it manufactured the talc products according to someone else's 'plans and specifications' and that those plans and specifications were not 'so apparently defective' that an ordinarily prudent manufacturer would have been on notice of the dangerous defect").

Because Resnik's claims against Kolmar could succeed in state court, J&J Defendants fail to establish that Kolmar was fraudulently joined.

II. Motion for Costs

Resnik seeks an award pursuant to 28 U.S.C. § 1447(c) for costs incurred in litigating the remand motion. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005); accord Williams v. Int'l Gun-A-Rama, 416 F. App'x 97, 99 (2d Cir. 2011). A removing party lacks an objectively reasonable basis when the removing party has no "colorable argument that removal was proper." See In re Standard & Poor's Rating Agency Litig., 23 F. Supp. 3d 378, 407 (S.D.N.Y. 2014).

J&J Defendants made colorable arguments in favor of their fraudulent joinder claim. Although Resnik claims that the case law leaves "no doubt" that defendants were not fraudulently joined, J&J made a reasonable argument supported by authoritative -- but ultimately distinguishable -- case law that Resnik's complaint was not sufficiently well pleaded.

Moreover, courts in this district do not agree whether the "no possibility" standard for fraudulent joinder articulated in Pampillonia requires a removing defendant to show there is truly "no possibility" or simply "no reasonable possibility" that plaintiff can state a cause of action against the non-diverse defendants in state court. Compare Stan Winston Creatures, Inc. v. Toys "R" US, Inc., 314 F.Supp.2d 177, 183 (S.D.N.Y. Apr. 17, 2003) ("legally impossible"); Nemazee v. Premier, Inc., 232 F.Supp.2d 172, 178 (S.D.N.Y. 2002) ("no possibility"); Arseneault v. Congoleum Corp., 2002 WL 472256, at *5 n.4 (S.D.N.Y. Mar. 26, 2002) ("no possibility") with Fed. Ins. Co. v. Tyco Int'l Ltd., 422 F.Supp.2d 357, 386 (S.D.N.Y. 2006) ("no reasonable possibility"); In re Rezulin Prods. Liability Litig., 133 F.Supp.2d 272, 285 (S.D.N.Y. 2001) ("no reasonable possibility"). Nor do courts in this district agree whether the "no possibility" standard incorporates state court pleading standards. Compare Harris v. Zimmer Holdings, Inc., 2019 WL 1873178, at *3 (S.D.N.Y. Apr. 26, 2019) (evaluating potential for recovery using Ohio pleading

standards); Kuperstein v. Hoffman-La Roche, Inc., 457 F. Supp. 2d 467, 471-72 (S.D.N.Y. 2006) (New York pleading standards) with Sonnenblick-Goldman co. v. ITT Corp., 912 F.Supp. 85, 90 (S.D.N.Y. 1996) (applying the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b)) and Wachtell, Lipton, Rosen, & Katz v. CVR Energy, Inc., 18 F.Supp.3d 414, 420-421 (S.D.N.Y. 2014) (declining to discuss pleading standards at all). Given this uncertainty, J&J Defendants made a colorable argument that Resnik's amended complaint, which does not offer much detail on her purchases from Rite Aid or Walgreens or on the connection between Kolmar's processing operations and the products Resnik purchased, did not evince a "reasonable possibility" that a state court would impose liability on the New York defendants.

J&J Defendants failed to clear the high bar of establishing fraudulent joinder, but this does not mean that their arguments were frivolous. See Kuperstein, 457 F.Supp.2d at 472 (S.D.N.Y. 2006) ("[T]he mere fact that the defendant fails to carry his burden does not of itself require an award of costs to the plaintiff."). Accordingly, Resnik is not entitled to costs pursuant to section 1447(c).

CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion to remand and DENIES plaintiff's motion for costs. Clerk to enter judgment.

SO ORDERED.

Dated: New York, NY

July 6, 2021

_____
JED S. RAKOFF, U.S.D.J